**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LARRY A. OLADIPUPO                          *

Petitioner                                             *

v                                                           *            Civil Action No. PWG-18-1016

WARDEN and                                     *
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND                       *

Respondents                                        *
                                                         ***

<u>**MEMORANDUM OPINION**</u>

Petitioner Larry A. Oladipupo filed the above-captioned Petition for Writ of Habeas Corpus on April 6, 2018. ECF No. 1 ("Petition"). I have reviewed the parties' filings and the records they have submitted and determined that no hearing is necessary to resolve Mr. Oladipupo's Petition. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons set forth below, the Petition shall be denied and a certificate of appealability shall not issue.

**BACKGROUND**

The events leading up to Petitioner's conviction began on February 5, 2015, when Thalia Alexis, who was Petitioner's girlfriend for approximately six-years prior to that date, called 911 on a cellphone she borrowed from a stranger at a shopping center on Quince Orchard Boulevard in Montgomery County, Maryland. *See* ECF No. 18-1 at 177-97 (Direct testimony Cpl.. Jessica Duke); 203-17 (Direct testimony Det. Everett Cammack), *see also* ECF No. 3-4 at 6 (Ct. of Spec. App. Op.). When Ms. Alexis called 911, she stated that her boyfriend tried to kill her and

threatened to kill her family. ECF No. 3-4 at 6. The Maryland Court of Special Appeals further summarized the evidence as follows:

> Crying and out of breath, she explained to the operator that the boyfriend had told her he needed to speak with her in his car; when she entered the car, he punched, slapped, backhanded, and choked her to get her "to start telling the truth," although she did not know what he thought she had done. She refused to give the 911 operator the boyfriend's name for fear he would retaliate against her and her family.

> Gaithersburg City Police Corporal Jessica Duke and Officer Jonathan Bennett responded to Alexis's 911 call. When they arrived at the shopping center, Alexis was sitting on a curb, crying and visibly shaking—"utterly hysterical"—and repeating only that her boyfriend had beaten her up and she thought he was going to kill her. Although the officers did not initially see any injuries, Alexis said she had been choked and that her face hurt. Duke later saw "a little bit of swelling on the side of her face." In addition, the officers observed that Alexis's shirt was inside out.

> After much prodding from Duke, Alexis identified her boyfriend as Larry Oladipupo and relayed the details of the attack. She told Duke that on February 3, 2015, she had been at appellant's house. Suspicious of something he thought she had done, he pointed a silver handgun at her head and told her he was going to kill her.

> The next day, appellant texted Alexis numerous times to try to get her to meet and talk with him. When he knocked on her window late that night, she went outside, and he asked her to enter his vehicle. She refused, but he pushed her to the ground and dragged her to the vehicle.

> Appellant drove around for quite some time, "visibly upset" with Alexis. The pair argued, and appellant punched Alexis in the face, choked her, and banged her head against the car window.

> At one point, appellant pulled into a gas station and instructed Alexis to disrobe, telling her she was going to walk home naked. She stepped out of the car and took her clothes off, and he revved the engine. Fearing that he would run her over, she grabbed her clothes and ran to the Quince Orchard Plaza shopping center, where she made contact with a man and used his cell phone to call 911. Later that night, Alexis completed a "Domestic Violence Supplemental," a document that is required when there is an allegation of assault by a person with whom the victim is in an intimate relationship. The supplemental detailed, on a diagram, where Alexis's injuries were, her demeanor as observed by the police officer filling out the form, and her comments and description of the abuse.

On February 6, 2015, Alexis was interviewed by Detective Corporal Everett Cammack at the Gaithersburg Police Department. During the interview, Alexis was calm and cooperative as she added details to the narrative that she had given to Duke.

Alexis told Cammack that on February 2, 2015, she had spent the night at appellant's parents' house, where he lived. When appellant did not receive an adequate explanation about an alleged incident, he got angry with her.

Early in the morning of February 3, 2015, Alexis was asleep on the couch in the basement where appellant slept; when she awoke, appellant was staring at her in the dark. He reached under a cushion on the couch and pulled out a silver gun that may have had a black grip, placed it against her forehead, and questioned her about a neighbor he had seen in his yard. He only stopped questioning her approximately 35 minutes later, when he heard his parents moving upstairs. Alexis was then able to leave the house.

Alexis did not respond to appellant's numerous calls or texts the next day. At approximately 1:00 a.m. on February 5, 2015, appellant appeared at Alexis's apartment and knocked on her ground floor window. She told her mother she was going outside to speak with him.

Although she was reluctant, appellant convinced her to get into his car. As soon as she entered the car, his wheedling demeanor changed to anger, and he told her she was going to die. Alexis tried to get out of the car, but appellant grabbed her by her jacket, choking her, and drove away. As he pulled away from her apartment, he hit her and threatened her and her family. He continued to drive and hit her and bang her head against the window.

When they arrived in Rockville, appellant ordered her to undress completely, after which he rolled down all the car windows, telling her she would freeze. He eventually pulled into a gas station in Gaithersburg and told her to get dressed. She did so hurriedly, putting her shirt on inside out, but she was unable to find her underwear or glasses. She jumped out of the car and ran to the nearby shopping center, where she encountered Smith, the stranger who let her use his cell phone to call the police. Alexis identified appellant as her assailant from a "target sheet" the police had made when they were looking for appellant on outstanding warrants.

ECF No. 3-4 at 3-10 (footnotes omitted).

On February 6, 2015, a search warrant was executed at Petitioner's parents' house, where he was living at the time. During the search, police recovered a "loaded, black 9 millimeter handgun under a couch cushion in the basement," an iPhone, and a pair of tan pants with

Petitioner's identification in the pocket. ECF No. 3-4 at 10. Petitioner was charged with two counts of first-degree assault, use of a firearm in commission of a crime of violence, kidnaping, illegal possession of a regulated firearm, and illegal possession of ammunition. ECF No. 18-1 at 112-13.

Prior to trial, Ms. Alexis began sending emails to the lead detective, Everett Cammack, indicating that she was afraid to testify against Petitioner and on the day trial was set to begin, informed the State's Attorney that she was refusing to testify. The State's motion to compel Ms. Alexis's testimony was granted by the trial court after assurances were made that anything she testified to could not be used against her.[1] ECF No. 18-1 at 108-9. After Ms. Alexis took the stand, she claimed she could not recall why she had called the police on February 5, 2015 and denied that Petitioner had assaulted her. *Id*. at 126-60 (Direct testimony of Thalia Alexis). The State was granted permission to treat Ms. Alexis as a hostile witness. *Id*. at 147. Under cross-examination by defense counsel, Ms. Alexis confirmed that she told counsel prior to trial that she had made the entire story up because at the time she was drunk and high on marijuana and because she was angry with Petitioner because she believed he had cheated on her. *Id*. at 160-75.

The defense's case included testimony from Petitioner's mother, Cynthia Oladipupo, who claimed that Petitioner did not stay in the basement of her house, rather her other son Lamar stayed there. ECF No. 18-2 at 162. Although she initially denied having a conversation with Petitioner concerning Ms. Alexis's anticipated testimony, after a recorded telephone conversation from the jail between Petitioner and Mrs. Oladipupo was played for the jury, she acknowledged that Petitioner asked her to tell Ms. Alexis that he would press charges against her if she testified at trial. *Id*. at 175. During the recorded conversation, Petitioner stated in part, "if the bitch come to

---

[1]     Ms. Alexis appeared in court with counsel who expressed concern that she could be charged with making a false report to police if she testified under oath that her earlier reports regarding Petitioner were false. ECF No. 18-1 at 97-109.

court, press charges on her. That's what I'm saying. Tell her we're going to press charges on her." *Id*.

Ms. Alexis also testified for the defense. ECF No. 18-2 at 178-92. A video recorded from inside a police car that arrived at the initial scene on February 5, 2015 was played for Ms. Alexis during her testimony. *Id*. at 180. When asked why she appeared to be having difficulty walking, Ms. Alexis claimed that she was high and had been drinking all day. *Id*. at 181. Consistent with her prior denials during the State's case in chief, Ms. Alexis denied that Petitioner hit her in the face, choked her, or otherwise assaulted her. *Id*.

On August 6, 2015, the jury returned a verdict of guilty on the charge of first-degree assault on Ms. Alexis occurring on February 3, 2015; use of a firearm in the commission of a felony on February 3, 2015; second-degree assault of Ms. Alexis on February 5, 2015; kidnaping; illegal possession of a firearm, and illegal possession of ammunition. ECF No. 18-3 at 10-11.

On October 21, 2015, the court sentenced Petitioner to serve a total of 25 years which was made consecutive to an earlier imposed 17-year term for violation of probation. ECF No. 18-4 at 11-14.

In his direct appeal to the Maryland Court of Special Appeals, Petitioner alleged that the trial court erred in admitting testimony that indicated he had been in jail before the events giving rise to this criminal prosecution and he challenged the sufficiency of the evidence relied upon to convict him. ECF No. 3-2 at 2. With regard to the first claim, Petitioner took issue with a portion of Corporal Jessica Duke's testimony during which she responded that Ms. Alexis told her, "[h]e pointed a silver handgun at her head and told her that he was going to kill her, and that she was trying [to] set him [up] and send him *back to prison*." ECF No. 18-1 at 183 (emphasis supplied). Defense counsel's motion for a mistrial based on this testimony was denied. *Id*. at 185-87; 190-

91. Upon the jury's return to the courtroom, the court gave a curative instruction that the statement could be weighed by the jury in connection with determining the credibility of the witnesses. *Id.* at 191-2. The appellate court denied relief on Petitioner's first claim on the basis of Maryland's evidentiary rules and the exceptions thereto. *See* ECF No. 3-4 at 18-19. Specifically, the court observed that:

> Maryland Rule 5–404(b) provides that a court may not admit evidence of other crimes, wrongs, or acts that is offered "to prove the character of a person ... to show action in conformity therewith." The rule is intended to prevent the jury from "'developing a predisposition of guilt'" based on unrelated conduct by the defendant. *Sinclair v. State*, 214 Md.App. 309, 334 (2013) (quoting *State v. Faulkner*, 314 Md. 630, 633 (1989)), *aff'd*, 444 Md. 16 (2015).

> Notwithstanding this rule of exclusion, a trial court may admit other crimes or prior bad acts evidence if it has special relevance and satisfies three requirements. First, the evidence must be relevant to the offense charged on some basis other than mere propensity to commit crime, such as "motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident." Second, the evidence must be clear and convincing that the defendant was involved in the alleged acts. Third, the probative value of the evidence must substantially outweigh its potential for unfair prejudice to the defendant. *Gutierrez v. State*, 423 Md. 476, 489–90 (2011) (citing *Faulkner*, 314 Md. at 634–35).

> In our view, all three requirements were met. First, the trial court found that Alexis's statement that appellant was suspicious that she was trying to set him up to send him back to prison provided a motive for his attacks. During her interview with Cammack, Alexis stated that appellant becomes paranoid when he "thinks everyone's against him. Everyone's trying to set him up." She added that when he pointed the gun at her on February 3, 2015, appellant asked if she were telling people his business and trying to set him up. His belief that Alexis was trying to set him up, and, as she told Duke, send him back to prison, provided evidence of his motive in assaulting Alexis on two occasions, when she said he had never done so before during their six-year relationship.

> Second, defense counsel's admission, as an officer of the court, that he would be lying to the jury if he claimed that appellant had not been in prison previously provided clear and convincing evidence that appellant had been in prison.

> Finally, third, the court found that the evidence regarding appellant's possible motive in attacking his girlfriend was probative and outweighed the potential for unfair prejudice. We agree, particularly in light of the fact that the court

reminded the jurors that Alexis had testified differently in court and that it was up to them to weigh the credibility of her statements. Thus, the jury was aware that it could determine that Alexis's statement to Duke was entirely fabricated, especially when it was reminded that it had heard no direct evidence that appellant was then, or had previously been, in prison.

Moreover, this Court has made clear that we will not find reversible error "when objectionable testimony is admitted if the essential contents of that objectionable testimony have already been established and presented to the jury without objection through the testimony of other witnesses." *Berry v. State*, 155 Md.App. 144, 170 (2004). *See also Jones v. State*, 310 Md. 569, 589 (1987), *vacated on other grounds*, 486 U.S. 1050, *on remand*, 314 Md. 111 (1988)) ("Where competent evidence of a matter is received, no prejudice is sustained where other objected to evidence of the same matter is also received."). Here, the jury also heard from Cammack, without objection, that Alexis identified appellant as her attacker from a "target sheet" the police had made when they were looking for appellant on outstanding warrants. Thus, the fact that appellant had committed other crimes was already properly before the jury, and Duke's testimony to the same effect could hardly be deemed unfairly prejudicial.

ECF No. 3-4 at 18-20.

Petitioner's sufficiency of the evidence claim was described by the Court of Special Appeals as follows:

1. **First-degree assault**—there had been no indication that a firearm was used in the commission of an assault, as the only allegation (which Alexis had recanted) was that a silver handgun was pointed at the victim, but only a black handgun was found in appellant's home. In addition, there was no evidence of intent or resulting injury to justify a finding of first-degree assault based on the likelihood of injury or death.

2. **Use of a firearm in the commission of a violent crime**—as above, the victim complained only about a silver firearm, which was not found, and recanted her statement during her trial testimony.

3. **Kidnaping**—Alexis was not confined against her will, as she willingly entered appellant's car. There was also no evidence that appellant moved her with the intent to carry or conceal her.

4. **Illegal possession of firearm and ammunition**—no evidence, including DNA or fingerprints, linked the firearm found in appellant's house with him, nor had there been any report that anyone saw him in possession of a black handgun. The court denied the motion.

ECF No. 3-4 at 12 (emphasis in original).

The Court of Special Appeals characterized Petitioner's claims in connection with the first three counts as an attack on the credibility of the complaining witness Thalia Alexis. The appellate court rejected Petitioner's argument as an improper means of challenging the sufficiency of the evidence. ECF No. 3-4 at 20-21 quoting *Correll v. State*, 215 Md. App. 483, 501-02 (2013). In *Correll*, the Court of Special Appeals stated:

> None of the arguments the appellant advanced regarding sufficiency have any merit either. **They all amount to nothing more than taking issue with the weight and credibility determinations made by the jury.** It is "the jury's task to resolve any conflicts in the evidence and assess the credibility of witnesses." In so doing, the jury "can accept all, some, or none of the testimony of a particular witness." It is not a proper sufficiency argument to maintain that the jurors should have placed less weight on the testimony of certain witnesses or should have disbelieved certain witnesses. **Here, the jurors were presented with evidence that, if credited, was legally sufficient to support a finding of each element of each crime charged, beyond a reasonable doubt**. . . In other words, if the jury credited Alexis's statement to the police, the officers' and David Smith's testimony of her hysterical demeanor on the night of the attack, the hospital records that suggested she had been injured on February 5, 2015, and the fact that she filled out a domestic violence supplemental form, and received a protective order, **it had more than sufficient evidence before it to convict [Petitioner] of the charged crimes**.

*Id*. at 20-21.

The Court of Special Appeals addressed Petitioner's challenge of the sufficiency of the evidence in connection with the handgun possession charge separately and found it to be "equally unavailing." ECF No. 3-4 at 21. The court acknowledged that Petitioner was "not in actual possession of the handgun when the police discovered it during the execution of the search warrant at his parent's house." *Id*. However, the State provided circumstantial evidence that Petitioner stayed in the room where the gun was found, *i.e.*, a pair of pants with his license in the pocket. *Id*. Although Petitioner's mother testified otherwise, "the jury was free to credit Alexis's statement to the police that [Petitioner] usually slept in the basement and that she was there with him on the

night of February 3, 2015, when he retrieved the gun from under the same sofa cushion as the police later found it." *Id.* "If believed by the jury, the evidence was sufficient to prove [Petitioner's] constructive possession of the gun, even in the absence of DNA or fingerprint evidence linking him to it." *Id.*

On November 29, 2016, Petitioner filed a handwritten notice to the Maryland Court of Special Appeals stating that he wanted to "submit [a] Petition for Writ of Certiorari" in connection with case numbers 1960 and 1959.[2] ECF No. 3-4 at 3. The Court of Appeals acknowledged receipt of the petition for writ of certiorari (*id.* at 2) and denied it on January 24, 2017 (*id.* at 1).

Mr. Oladipupo filed this Petition on April 6, 2018. In it, Mr. Oladipupo identified the following grounds for relief: (1) insufficient evidence to support the conviction because Thalia Alexis recanted her statement to the police (ECF No. 1 at 5); (2) trial counsel was ineffective because they: failed to file a motion to set aside the verdict for insufficient evidence on the ground of Ms. Alexis's recantation; failed to file a motion for recusal; and failed to prepare for trial; (3) trial counsel was ineffective because they failed to provide Mr. Oladipupo with a discovery pack so he could help with his case; and (4) the trial court erred in denying the defense motion for judgment of acquittal as to first-degree assault because there was "no evidence of firearm use and no evidence of serious physical injury."[3] In a subsequent filing, Mr. Oladipupo added a fifth ground for relief, arguing that the trial court erred by admitting testimony that acknowledged that Mr. Oladipupo had been in jail prior to the subject crimes, ECF No. 10.

---

[2]     The Maryland Court of Special Appeals case number for Petitioner's direct appeal is 1959. ECF No. 3-4 at 5.

[3]     Petitioner adds that he believes the trial judge was biased because he presided over a prior case against Petitioner during which he observed that "my impression of you was that you're a thug and a street hoodlum" after reviewing the papers and documents in the case. ECF No. 11 at 2. This claim is unexhausted as it does not appear anywhere in Petitioner's appeal. Further, it is meritless on its face. In the same transcript (which Petitioner appended to his supplemental pleading) the judge observed that the impression gleaned from the paperwork was refuted by testimony from officials who had interacted with Petitioner personally in connection with the case. *Id.*

On May 30, 2018, Respondents filed a Limited Response to Mr. Oladipupo's Petition, which argued that the Petition should be dismissed because Mr. Oladipupo failed to exhaust his ineffective assistance of counsel claims. ECF No. 3. On June 11, 2018, Mr. Oladipupo filed a motion to dismiss his Petition without prejudice, ECF No. 5, which I granted, ECF No. 6. On June 20, 2018, nine days after he moved for dismissal, Mr. Oladipupo filed a letter to the Court indicating that he had "changed his mind" and wished to proceed with his Petition. ECF No. 7. His correspondence also indicated that he was "waiving consideration of [his] [i]neffective assistance of counsel claims." *Id*. Because I had already granted Mr. Oladipupo's Motion to Dismiss, I construed his subsequent correspondence as a Motion for Reconsideration, which I granted. ECF No. 8. I also dismissed Mr. Oladipupo's ineffective assistance of counsel claim without prejudice. *Id.* at 3.

In my October 5, 2018, Memorandum Opinion, ECF No. 8, I also addressed whether Mr. Oladipupo's claim regarding the sufficiency of the evidence against him was procedurally defaulted. *Id.* at 3–7. Because the record before me did not make clear whether Petitioner, or an attorney on his behalf, had filed a brief in support of his request for certiorari review regarding that issue, I directed Mr. Oladipupo to show cause why his Petition for Writ of Habeas Corpus should not be dismissed as procedurally defaulted. *Id.* at 6–7. I also advised the Respondents that they could file a "reply" to Mr. Odalipupo's response to the show cause order. *Id.* at 7.

Mr. Oladipupo's response did little to clarify the issue. In it, Mr. Oladipupo stated that the brief he referenced in his certiorari petition was the brief that "was filed and denied" in the Court of Special Appeals. ECF No. 9 at 1. He went on to state: "It was a typo. I didn't want to add in that I would send a 35-page brief from my attorney. That is why this default occurred." *Id.* Mr.

Oladipupo then asserts that any procedural default should be excused because a manifest injustice would result in the continued incarceration of one who is actually innocent. ECF No. 9. In support of that claim, Mr. Oladipupo asserts that the "alleged victim is not terrified of me and has been to the prison to visit me on multipl[e] occasions." *Id*. at 1; ECF No. 9-1 at 1. In further attempt to prove that the charges against him are false and that he is innocent, he attaches a notice from prison officials that Ms. Alexis has been placed on his visitors list as well as a letter he purportedly received from Thalia Alexis during his incarceration. *See* ECF No. 9-1 at 2-4.

Respondents were ordered to supplement their Limited Response to address the balance of Mr. Oladipupo's claims. ECF No. 13. In that Supplemental Response, the Respondent notes that it "appears that [Mr.] Oladipupo appended to his certiorari petition a copy of his appellate brief before the intermediate appellate court." ECF 18 at 24. As grounds for refusing relief, Respondents assert in their supplemental filing that Mr. Oladipupo's evidentiary insufficiency claims are partially procedurally defaulted, that his claim of improperly admitted other-bad-act evidence does not present a federal claim, and that all of his claims lack merit. *Id.*

**STANDARD OF REVIEW**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White*

*v. Woodall*, 572 U.S. 415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." *Id.* (quoting *Rice*, 546 U.S. 333, 341–42 (2006) (alterations omitted)). "[A]

12

federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

The Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the

petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.*, the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's

claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995).

## DISCUSSION

### A.   Sufficiency of the Evidence

Mr. Oladipupo contends that his convictions were not supported by sufficient evidence on the theory that his victim, Ms. Alexis, recanted, or at least vacillated on, her pretrial account of the crime. The Respondents argue that, because Mr. Oladipupo did not "fairly present" this claim in his certiorari petition to the Maryland Court of Appeals, he failed to exhaust that claim and it is procedurally defaulted. ECF No. 18 at 26-27. The Respondents acknowledge, however, that Mr. Oladipupo included the claim in his direct appeal to the Court of Special Appeals and also state that it "appears that [Mr.] Oladipupo appended to his certiorari petition a copy of his appellate brief before the intermediate appellate court." *Id*. at 24. In my view, based on the record before me, it remains unclear whether the Maryland Court of Appeals was fairly presented with, or actually reviewed, Mr. Oladipupo's insufficient evidence claims. Accordingly, I will address Mr. Oladipupo's claim on the merits.

In the context of a petition for habeas corpus, the evidence presented at trial is sufficient to support a conviction if, after viewing evidence in a light most favorable to the prosecution, any rational trier of fact could find essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established. *United States v. Tresvant*, 677 F.2d 1018 (4th Cir. 1982). Significantly, the determination of the credibility of each witness is within the sole province of the jury and is not susceptible to review. *United States v. Saunders*, 886 F.2d 56 (4th Cir. 1989);

*Pigford v. United States*, 518 F.2d 831 (4th Cir. 1975). In sum, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Cavazos v. Smith*, 565 U.S. 1, 7 (2011), quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979).

Here, Mr. Oladipupo challenges the sufficiency of the evidence supporting his convictions for two reasons. *First*, as explained above, Mr. Oladipupo claims that the fact that Ms. Alexis recanted her earlier statements to police rendered the evidence adduced at trial insufficient to support his convictions. S*econd*, Mr. Oladipupo claims that there was no evidence of the use of a firearm or of a serious injury, and that the trial court therefore erred by denying his motion for judgment of acquittal on the first-degree assault. I disagree.

As ably noted in the Opinion of the Court of Special Appeals, both of Mr. Oladipupo's sufficiency of evidence arguments hinge directly on the jury's assessment of Ms. Alexis's credibility. Ms. Alexis made detailed reports to law enforcement regarding the alleged assaults and kidnaping over the course of two days. Those reports included allegations that Mr. Oladipupo had pointed a gun at her head and threatened to kill her. At trial, Ms. Alexis recanted, initially testifying that she did not remember why she had made those reports, and eventually stating that she did so because she was drunk, high, and angry at Mr. Oladipupo because she believed he had been unfaithful. The jury was also presented with evidence of Ms. Alexis's earlier statements, her 911 call, law enforcement's descriptions of her demeanor at the time of her earlier statements, and evidence that she had been threatened against testifying against Mr. Oladipupo. In light of that evidence, the jury apparently concluded that Ms. Alexis's live recantation of her prior statements was not credible, a determination solely within its purview, and one that is not subject to the

16

Court's review. *See United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983) ("We, of course, do not weigh the evidence or review the credibility of witnesses in resolving the issue of substantial evidence.") Furthermore, assuming, as I must, that the jury resolved any conflicting inferences in the prosecution's favor, there was substantial evidence from the which the jury could find Mr. Oladipupo guilty beyond a reasonable doubt. *Id.* Accordingly, Mr. Oladipupo's request for habeas relief must be denied with respect to his claim that his conviction was not sufficiently supported by the evidence produced at trial.[4]

## B.     Other bad-act evidence

As noted above, federal habeas relief is only appropriate when a petitioner presents a federal claim. *See* 28 U.S.C. § 2254(a). Petitioner's claim that the trial court improperly allowed the jury to consider the "back to jail" statement attributed to him by Ms. Alexis was painstakingly resolved by the Maryland Court of Special Appeals on the basis of State evidentiary law. *See* ECF No. 3-4 at 18-19. Absent violation of a constitutional right or federal law, a federal habeas petitioner fails to state a cognizable claim for relief. *Wilson v. Corcoran*, 562 U.S. 1, 1 (2011) (holding courts may not issue writs of habeas corpus to prisoners whose confinement does not violate federal law."); *Spencer v. Murray*, 18 F.3d 267, 239-40 (4th Cir. 1995) (holding where petitioner alleged error in admissibility of evidence, without reference to any constitutional right infringed, petitioner failed to state a claim.). Petitioner's claim that the trial court erred in allowing the jury to consider the statement does not fit within the narrow exception where the trial court's

---

[4]     Petitioner's assertion that he is "actually innocent" is simply a permutation of the evidentiary sufficiency claim as it relies entirely on his view that the victim lied to the police when she reported his conduct on February 3 and 5, 2015. The Supreme Court has cautioned that "tenable actual-innocence gateway claims are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013) quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

ruling "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Accordingly, federal habeas relief is also denied as to this claim.

### CERTIFICATE OF APPEALABILITY

Having found that the Petition for Writ of Habeas Corpus does not present a claim upon which federal habeas relief may be awarded, this Court must consider whether a certificate of appealability should issue. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2). Petitioner may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.


   5/16/2022                                              /S/
Date                                              Paul W. Grimm
                                                  United States District Judge

18